[No. 4930–2–III.   Division Three.   May 17, 1983.]

WASHINGTON MUTUAL SAVINGS BANK, *Respondent,* v.
THOMAS J. SALTZ, ET AL, *Appellants.*

*Dale L. Russell,* for appellants.

*Diane M. Hermanson* and *Paine, Coffin, Hamblen &
Brooke,* for respondent.

ROE, C.J.—In 1980 defendants purchased a mobile home
from North Country Mobile Homes. They were advised
that special low interest financing was available through
plaintiff Washington Mutual Savings Bank (Bank). On the
same day the purchasers went to the Bank and signed a
promissory note for $35,800 and contemporaneously exe-
cuted a security interest and mortgage in favor of the Bank.
After delivery of the mobile home, substantial defects
appeared which were not adequately corrected by the
dealer and the manufacturer. Defendants ceased making
payments alleging breach of contract and warranties and
pursuant to RCW 62A.2–717 placed the payments in a trust

account and deducted damages from the account.

Not having received payments, the Bank sued to foreclose the mortgage and moved for summary judgment. Defendants appeal from a summary judgment to the Bank.

In this case there was a direct loan from the Bank to the purchasers who took the money and paid a third person for the mobile home. There was no assignment from the seller to a financing agent or to a bank for collection. Normally, this would end the matter since a lender of money to a person who purchases goods is not responsible for any defects in the goods so purchased. *See* RCW 62A.3–305 (holder in due course). The purchasers, however, seek to avoid this rule by claiming the Bank and the mobile home seller were in effect engaged in a joint venture to sell mobile homes and earn interest income. It is asserted they were in a quasi–partnership arrangement and that the purported arrangement was a subterfuge to avoid the effect and intent of RCW 62A.9–318, RCW 63.14.150 and RCW 62A.2–717.[1] The Bank denies this claim.

At the hearing on plaintiff Bank's motion for summary judgment, purchasers submitted no interrogatories or depositions, but only the affidavit of purchaser Saltz which states the mobile home was financed by Washington

---

[1] RCW 62A.9–318 provides in pertinent part:

"(1) Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in RCW 62A.9–206 the rights of an *assignee* are subject to

"(a) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and

"(b) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives notification of the assignment." (Italics ours.)

RCW 63.14.150 provides in pertinent part:

"No provision of a retail installment contract or retail charge agreement shall be valid by which the buyer agrees not to assert against the seller or against an *assignee* a claim or defense arising out of the sale . . ." (Italics ours.)

RCW 62A.2–717 provides:

"The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract."

Mutual Savings Bank; it was materially defective; the dealer's attempts to fix it failed; payments were placed in a trust account and used to deduct damages from the sales price; and no payments have been missed.

The affidavit then concludes: "The bank under both Federal and State law must stand in the shoes of the seller for sales of personal property to a consumer so thus, we are not in default on our note to the bank and so there is no material issue of fact or law as to any liability against us."

■ That last paragraph is conclusory only and is not evidence. Obviously, the above affidavit of the purchaser does not support a finding that the Bank and mobile home dealer are joint venturers or in a quasi–partnership. In support of its motion for summary judgment, the Bank submitted copies of the promissory note, security interest and mortgage which were not disputed and would support the motion. At the time of argument, the court indicated it would grant the Bank's motion. Upon motion for reconsideration, an additional affidavit was submitted by the purchasers' attorney, stating:

Evidence exists that clearly shows that the Plaintiffs and a certain mobile home dealer, that sold a defective home to Defendants had entered into a quasi–partnership agreement with regard to sales of the homes.

The trailer dealer purchased a block of low interest financing from Plaintiffs, exclusively for his use in marketing the trailers. The lower interest, in a time where market interest was six to seven points higher was an overriding factor in Defendants purchasing a mobile home from the dealer.

The Defendants made 30% of their decision to purchase the home, on the home itself and 70% on the fact that the financing was lower than market. The proceeds of the loan could only be expended at that particular dealer by Defendants, and the Plaintiffs controlled all credit information, concerning the Defendant after it was accumulated by the dealer.

The Plaintiff and the dealer set up a joint venture to sell mobile homes. The dealer profited from the product mark–up and the Plaintiff profited from both the interest

and the fee from the dealer to make this "special financing available."

CR 56(e) mandates:

**(e) Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.[2]

Defendants' attorney's recitals cannot be considered as satisfying the requirements of the rule. Such evidence might be admissible if presented by some other person or in some other manner. But there is no recital or evidence the attorney was competent to testify as to it.

The only other support for defendants' position is a statement by their counsel made to the court in argument which refers to a letter from the dealer and a contract between the dealer and Bank that "clearly indicates the bank and trailer dealer have entered into a quasi–partnership or joint venture agreement", and that at trial the dealer would provide "both oral and documentary evidence of the arrangement". Again, this fails to satisfy the requirements of CR 56. Under these circumstances, this court must affirm the granting of summary judgment in favor of the Bank.

We express some concern and sympathy for the problem

---

[2]CR 56(f) further provides:

"**(f) When Affidavits Are Unavailable.** Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as *is just.*"

which has produced the Uniform Consumer Credit Code §
3.405(1) (1974), 7 U.L.A. 723 (1978),[3] which has been
adopted in toto or substantially by at least 11 states.
Washington has not adopted that code and in fact our Leg-
islature has rejected it. (*See* 1 Consumer Cred. Guide
(CCH) ¶ 4771 (Feb. 17, 1981).) By this opinion we do not
foreclose the possibility of a close connection which may
exist between a provider of financing and a seller which
might make the financier subject to defects. For an excel-
lent discussion, *see* Clark, *The Close–Connectedness Doc-
trine: Preserving Consumer Rights in Credit Transactions,*
33 Ark. L. Rev. 490 (1979).

Finally, plaintiff Bank seeks attorney's fees on appeal
although it has failed to file timely its affidavit pursuant to
RAP 18.1. The purposes served by RAP 18.1(c) were out-

---

[3]Uniform Consumer Credit Code § 3.405(1) (1974), 7 U.L.A. 723 (1978):

"(1) *A lender,* except the issuer of a lender credit card, *who,* with respect to a
particular transaction, *makes a consumer loan* to enable a consumer to buy or
lease from a particular seller or lessor property or services[, except primarily for
an agricultural purpose,] *is subject to all claims and defenses of the consumer
against the seller* or lessor arising from that sale or lease of the property or ser-
vices *if*:

"(a) the lender knows that the seller or lessor arranged for the extension of
credit by the lender for a commission, brokerage, or referral fee;

"(b) the lender is a person related to the seller or lessor, unless the rela-
tionship is remote or is not a factor in the transaction;

"(c) the seller or lessor guarantees the loan or otherwise assumes the risk of
loss by the lender upon the loan;

"(d) the lender directly supplies the seller or lessor with the contract docu-
ment used by the consumer to evidence the loan, and the seller or lessor has
knowledge of the credit terms and participates in preparation of the docu-
ment;

"(e) the loan is conditioned upon the consumer's purchase or lease of the
property or services from the particular seller or lessor, but the lender's pay-
ment of proceeds of the loan to the seller or lessor does not in itself establish
that the loan was so conditioned; or

"(f) the lender, before he makes the consumer loan, has knowledge or, from
his course of dealing with the particular seller or lessor or his records, notice of
substantial complaints by other buyers or lessees of the particular seller's or
lessor's failure or refusal to perform his contracts with them and of the partic-
ular seller's or lessor's failure to remedy his defaults within a reasonable time
after notice to him of the complaints."

(Italics ours.)

lined recently by this division in *Lindsay Credit Corp. v. Skarperud,* 33 Wn. App. 766, 773, 657 P.2d 804 (1983). Accordingly, a $500 sanction will be imposed against plaintiff's attorney for failure to file the affidavit. Plaintiff is awarded $2,500 in attorney's fees.

Judgment is affirmed.[4]

GREEN and McINTURFF, JJ., concur.

---

[4]Plaintiff also named the Small Business Administration (SBA) as a defendant in this action, alleging in the complaint that SBA "has or claims some right, title or interest in and to the Property, but such right, title or interest of the defendant is subordinate, inferior and subject to the lien and claim of the plaintiff." The decree of foreclosure states the SBA disclaimed any interest in the property. The SBA was not a party to this appeal.